UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE CORRPRO SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) | JUDGE PAUL R. MATIA<br><br>CASE NO. 1:02CV1198<br><br><br>MEMORANDUM OF OPINION AND ORDER |

This action, consisting of three consolidated cases (1:02CV1198, 1:02CV1616, 1:02CV1653), was brought under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b-5, 17 C.F.R. § 240.10b-5, and § 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). Corrpro Companies, Inc. (Corrpro) is a leading provider of corrosion control engineering services, systems and equipment to the infrastructure, environmental, and energy markets around the world. Besides Corrpro, defendants are the Chairman of the Board of Directors and Chief Executive Officer, Executive Vice President, and former Chief Executive Officers and former Executive Vice Presidents. The complaints allege that the defendants intentionally and recklessly misrepresented the truth about Corrpro's financial results, inflating its revenues and disguising its losses during the period

April 1, 2000 through March 20, 2002.  These misrepresentations caused Corrpro's consolidated operating income before taxes through December 31, 2001 to be inflated by between $4.5 and $5.3 million.  In addition, as a result of the misrepresentations, Corrpro is expected to have to take a charge to pretax earnings in Corrpro's fiscal fourth quarter ending March 31, 2002 of between $5.3 and $6.7 million.  Because of these material misrepresentations, Corrpro securities traded at inflated prices on the New York Stock Exchange.  Count II is a claim pursuant to § 20 of the Securities Exchange Act against the individual defendants as controlling persons.

This matter is before the Court upon the defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF 67, 69). In addition to defendants' briefs in support of their motions, the Court has reviewed plaintiff's memorandum in opposition to defendants' motions to dismiss (ECF 71) and defendants' reply briefs. (ECF 74, 75).  For the reasons that follow, defendants' motions to dismiss are granted.

In determining a motion to dismiss under Rule 12(b)(6), the allegations of the complaint must be taken as true and construed in the light most favorable to the plaintiff.  *Dana Corp. v. Blue Cross & Blue Shield Mut. Of Northern Ohio,* 900 F.2d 882, 885 (6th Cir. 1990); *Windsor v. The Tennessean*, 719 F.2d 155,

2

158 (6th Cir. 1983), *cert. denied,* 469 U.S. 826 (1984); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976).  The complaint can be dismissed only if the plaintiff could prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  *In re Comshare, Inc. Securities Litigation,* 183 F.3d 542, 547 (6th Cir. 1999).  The court can consider the full text of SEC filings, prospectus, analysts' reports and statements essential to the complaint, even if not attached, without converting the motion into one for summary judgment.  *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).  Also, documents referenced in the plaintiff's complaint, whether or not attached as exhibits can be considered.  *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997).

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5, prohibit fraudulent activities in connection with securities transactions.  Section 10b makes it unlawful

> [t]o use or employ, in connection with the purchase or sale of any security..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5 prevents the making of "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5.

Allegations of securities fraud must satisfy the requirements of Fed. R. Civ. P. 9(b).  When fraud is alleged, Rule 9(b) requires that the circumstances constituting fraud be pleaded with particularity.  *In re Comshare,* 183 F.3d at 548.  In 1995, the Private Securities Litigation Reform Act (PSLRA), Pub L.No. 104-67 (1995), was enacted increasing the pleading requirements for a securities fraud case.  The PSLRA amended the Securities Exchange Act requiring the following:

> In any private action arising under this chapter in which the plaintiff may recover money damages on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2).  If the plaintiff does not satisfy this requirement, 15 U.S.C. § 78u-4(b)(3) allows the court, on defendant's motion, to dismiss the complaint. *In re Comshare*, 183 F.3d at 548.  The Securities Exchange Act also provides that:

> [i]n any private action arising under this chapter in which the plaintiff alleges that the defendant-
> (A) made an untrue statement of a material fact; or

4

(B) omitted to state a material fact necessary in order
to make the statements made, in the light of the
circumstances in which they were made, not misleading:
the complaint shall specify each statement alleged to
have been misleading, the reason or reasons why the
statement is misleading, and, if an allegation regarding
the statement or omission is made on information and
belief, the complaint shall state with particularity all
facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).

The Supreme Court has held that "scienter" which is defined as a "mental state embracing intent to deceive, manipulate, or defraud" is an essential element of a § 10b-5 case. *Id.*, quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 (1976).  In the Sixth Circuit, the required scienter in a § 10b-5 case may be alleged by setting forth facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud.  *In re Comshare,* 183 F.3d at 549, 551. Recklessness is highly unreasonable conduct which is an extreme departure from the standards of ordinary care.  The danger need not be known but it must at least be obvious that any reasonable man would have known of it.  *Id.* at 550.  The strong inference requirement entitles plaintiff only to the most plausible of competing inferences.  *Helwig v. Vencor*, *Inc.,* 251 F.3d 540, 553 (6th Cir. 2001), *cert. denied,* 536 U.S. 935 (2002).

5

The defendants argue that the amended complaint does not plead particularized facts giving rise to a strong inference of recklessness or conscious misbehavior. Plaintiff contends that the following five allegations show the requisite recklessness:

(1) The magnitude of the defendants' misstatements;
(2) The lengthy period during which defendants made statements supports a strong inference of scienter;
(3) Corrpro's former censure by the SEC for the same accounting violations raises a strong inference of scienter;
(4) Corrpro's high turnover of chief financial officers and numerous resignations from Corrpro Australia are strong evidence of scienter; and
(5) Defendants' regular dissemination of reports to its creditors raises a strong inference of scienter.

Corrpro is an Ohio corporation located in Medina, Ohio which provides corrosion control-related services, systems, equipment, and materials to markets around the world. All the individual defendants were officers or directors of Corrpro at various times during the class period. In the Mid-1990's, the SEC undertook an investigation focusing on Corrpro's 1995 fiscal year, from April 1, 1994 to March 31, 1995. In December 1997 and September 24, 1998, the SEC issued cease and desist letters to three former officers for failing to implement and maintain proper and adequate accounting controls because of overstated revenues and understatement of expenses.

In 1998, Corrpro faced the loss of a substantial portion of its business of corrosion protection for underground storage

6

tanks.  A change in regulations mandated that all underground storage tanks (UST) meeting certain criteria have corrosion protection in place by December 22, 1998 or be replaced or closed. So Corrpro began to phase out of the UST business and devote its resources to other corrosion-related markets.  During fiscal years 1999 and 2000, Corrpro acquired interests in eleven, primarily foreign, corrosion companies.

One of the acquired companies was Corrpro Australia. This company was geographically distant from Corrpro's Medina, Ohio headquarters and represented a small portion of Corrpro's business.  Of the 1,283 employees working for Corrpro on March 31, 2002, only 91 were employed by Corrpro Australia.  This company accounted for less than 4.5% of Corrpro's total revenues for fiscal years 2002 and less than 5% of Corrpro's total restated revenues for fiscal year 2001.

In the late 1990's, Corrpro entered into two debt agreements, a private placement of $30 million in fixed rate Notes in January 1998 and an $80 million revolving Credit Agreement with NBD Bank in March 1999.  Both the Notes and the Credit Agreement required Corrpro to maintain debt-to EBITDA ratios[1].  Failure to do so constituted a default under each Agreement.  About half of the

---

[1]     EBITDA is earnings before income taxes, depreciation, and amortization.

Corrpro debt carried variable rate interest causing the interest expense it paid to increase from approximately $3.8 million in fiscal year 1999 to $5.3 million in fiscal year 2000. In fiscal year 2001, its interest expense increased to $6.8 million.

In April, 2001, officials from the New York Stock Exchange (NYSE) informed Corrpro that it did not meet the market capitalization and Stockholder's equity standards for continued listing.  A compliance plan was submitted and accepted.  Although the Plan appeared to be successful, Corrpro transferred to the American Stock Exchange (AMEX) believing that it would be better served listed on that exchange.

On March 20, 2002, Corrpro announced that it had uncovered accounting irregularities at Corrpro Australia involving the overstatement of revenues and understatement of expenses dating back to at least the year 2000.  As a result of this discovery, Corrpro made a charge against pretax earnings of between $5.3 million and $6.7 million for the fourth quarter ending March 31, 2002, announced that fiscal year 2002 operating income would be reduced by between $4.5 million and $5.3 million and that the debt covenants were violated.

Corrpro restated its financial results on August 9, 2002.  EBITDA, originally reported at $10.8 million for fiscal year 2001, was restated to $3.47 million.  Corrpro originally

reported a $0.61 per share loss on $4.7 million losses for fiscal year 2001 and had to restate its per share loss to $1.07 on fiscal year 2001 losses of $8.3 million.  Earnings per share and net income for the first three quarters of fiscal year 2002, which were originally reported as $0.21 and $1,667,000.00 respectively, were restated to a net loss of $54,000.00 and $0.00 loss per share.  The restatement erased all earnings for fiscal year 2002.

As a result of the accounting irregularities, Corrpro Australia entered Voluntary Administration Proceedings.  It accomplished the deception by reporting false journal entries.  On the day following the announcement of the restatement, March 21, 2002, the price of Corrpro shares dropped from $2.30 per share to $1.10 per share on trading volume approximately 30% higher than the volume on March 20, 2002, wiping out nearly $11 million in value.  Subsequently, Corrpro Australia's managing director was placed on leave of absence and two individuals in the accounting department resigned.

THE MAGNITUDE OF DEFENDANTS' MISSTATEMENTS

During the class period, defendants allegedly grossly overstated financial results.  Plaintiff argues that restatements involving high magnitude support a strong inference of scienter. But GAAP violations alone are not enough to establish scienter. *In re Comshare,* 183 F.3d at 553.  Plaintiff must allege specific

9

"red flags" to have put the defendants on notice of the accounting errors.  *Id.*  As discussed below, plaintiff does not set forth any "red flags" indicating that defendants should have known of accounting violations at Corrpro.

THE LENGTHY PERIOD DURING WHICH DEFENDANTS MADE STATEMENTS.

Defendants allegedly misrepresented Corrpro's financial results over a 20 month period, during which they disseminated many press releases and public filings containing materially false results.  Plaintiff contends such repeated misstatements made over a long period of time shows, at the very least, recklessness.

Officials of Corrpro Australia, a subsidiary of Corrpro, overstated earnings and understated expenses causing misstatements from the parent company.  Although this allegedly occurred over a 20 month period, there are no allegations showing that Corrpro officials knew or should have been aware of Corrpro Australia officials' misconduct.

CORRPRO'S FORMER CENSURE BY THE SEC FOR THE SAME
ACCOUNTING VIOLATIONS

Plaintiff argues that the SEC's censure of Corrpro's former officers for the same conduct as the present defendants supports a strong inference of scienter.  The prior events occurred in 1994 and 1995 while the events at Corrpro Australia began in 2000.  None of the named individual defendants were involved in the SEC investigation.  There is nothing in the

amended complaint establishing that current officers should have reason to know of accounting irregularities occurring at an Australian subsidiary.  In *Gelfer v. Pegasystems, Inc.*, 96 F.Supp.2d 10, 15 (D. Mass 2000), cited by plaintiff, scienter was based on the fact that the same defendants were charged with the same misconduct at the same company during the approximately same time period.  Thus, defendants should have known of the improper accounting methods. The facts are distinguishable from the present case.  None of the individuals investigated by the SEC were involved in the accounting problems at Corrpro Australia ,and they are not defendants. The SEC investigation involved Corrpro's 1995 fiscal year from April 1, 1994 through March 31, 1995.  Corppro Australia began its improper accounting in 2000.  There are no allegations connecting the conduct of Corrpro Australia's employees, Corrpro's subsidiary, with the present defendants to suggest that what happened in 1994 and 1995 should have made them aware that its subsidiary was acting in the same manner as former Corrpro officials.

CORRPRO'S HIGH TURNOVER OF CHIEF FINANCIAL OFFICERS AND NUMEROUS RESIGNATIONS FROM CORRPRO AUSTRALIA

Plaintiff contends that Corrpro's chief financial officer (CFO) position was like a revolving door throughout the class period.  On January 26, 2001, two days after Corrpro announced the allegedly false and misleading results for the third

11

quarter of fiscal year 2001, Neal R. Restivo resigned from the position, and John L. Brack, Jr. was hired as CFO.  On April 2, 2001, at least about the same time that Corrpro received notice from the NYSE that it no longer met its listing requirements, Kurt R. Packer was hired to replace Brack.  On January 9, 2002, Packer resigned and was replaced by Marilyn Eisele as interim CFO. Then on March 20, 2002, the day that Corrpro announced that its financial results had been overstated, Eisele was replaced by Robert M. Sloan.  Finally, after the end of the class period, Sloan was replaced by Robert M. Mayer as CFO.

Several Corrpro Australia officials resigned during the class period.  The day before the misleading first quarter 2002 financial results were announced, Corrpro's co-director resigned, the managing director took a leave of absence and two individuals in the accounting department resigned.  Restivo, in addition to resigning as Corrpro's CFO, resigned as Director of Corrpro Australia on January 29, 2001, just days after the misleading third quarter results were announced on January 24, 2001.

According to plaintiff, Corrpro had six CFO's during the class period while defendant contends that four people served in that position.  Two of the individuals were intended to be temporary.  As to the other four, the amended complaint does not

12

establish any connection between the job turnover and the problems at Corrpro Australia.

Three employees leaving Corrpro Australia after Corrpro learned of their deception does not infer scienter of Corrpro. The fact that they left at this time was logical.  There is no indication that the defendants knew about or approved of their misconduct.

DEFENDANTS' REGULAR DISSEMINATION OF REPORTS

Under the June 9, 2000 Amendment to the Credit Agreement, the defendants were required to submit financial reports to Corrpro's creditors on a monthly basis.  The reporting requirement allegedly shows that defendants must have known of the accounting problems.  Defendants' familiarity with Corrpro's business, financial operations, and accounting controls allegedly supports a strong inference of scienter.  Again, the inaccuracies were caused by Corrpro Australia.  However, there is nothing in the amended complaint indicating that the defendants knew about these misrepresentations.  Plaintiff has not alleged how the monthly reports could have provided the defendants with knowledge that Corrpro Australia's accounting system was deficient and that its financial reports were false and misleading.

13

MOTIVE AND OPPORTUNITY

Plaintiff argues that the scienter requirement can be satisfied by alleging that the defendants had the motive and opportunity to commit fraud.  Facts showing motive and opportunity may be relevant to establishing the inference of fraudulent scienter.  *Helwig v. Vencor, Inc.,* 251 F.3d at 550.  Plaintiff must allege that defendants benefitted in some concrete and personal way from the purported fraud.  *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2nd Cir. 2000).  Generally, this occurs when corporate insiders are alleged to have misrepresented to the public material facts about the corporation's performance in order to keep the stock price artificially high while they sold their own shares at a profit.  *Id.* at 308.

Plaintiff contends, and defendants do not disagree, that defendants had an opportunity to commit fraud.  As Corrpro's senior officers and/or directors, they controlled the public dissemination of information about the company and could manipulate the price of the stock.  *In re Time Warner, Inc Securities Litigation,* 9 F.3d 259, 269 (2nd Cir. 1993), *cert. denied,* 511 U.S. 1017 (1994).

Plaintiff identifies three motives defendants had to commit fraud.  The first motive concerns Corrpro's amended Notes and Credit Agreements which were amended numerous times due to

14

Corrpro's inability to meet the requirements of the Agreements. Corrpro was allegedly under pressure not only to make necessary payments, but to show that its financial results were continuously improving and to maintain compliance with the loan requirements. But there are no allegations in the amended complaint that accounting errors or misstatements at Corrpro Australia were ignored in order to satisfy the requirements of the Agreements. Plaintiff has no specific factual allegations showing that Corrpro officials were motivated to avoid violation of the loan Agreements.  An unsupported allegation is insufficient to establish circumstantial evidence of misbehavior or recklessness. *P. Schoenfeld Asset Management LLC v. Cendant Corp.,* 142 F. Supp.2d 589, 615 (D. N.J. 2001).  Allegations of scienter should not be based on generalized theories or motives which are widely held by corporations and executives.  *Wilson v. Bernstock,* 195 F. Supp.2d 619, 634 (D.N.J. 2002).  For instance, a company's desire to maintain a high bond or credit rating does not qualify as a sufficient motive for fraud because if scienter could be pleaded on that basis alone, every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.  *Id.* at 634.

In *In re United States Aggregates, Inc. Securities Litigation,* 235 F.Supp.2d 1063. 1071 (N.D. Cal. 2002), the

15

plaintiff alleged that improper accounting was motivated by a requirement to maintain financial ratios in the loan agreements. The information was obtained from confidential witnesses such as the chief financial officer, controller, assistant controller, and credit manager.  The court determined that the allegations were sufficiently concrete, particular, and corroborated to raise an inference that the loan agreements could have motivated the defendants to disseminate false financial data.  *Id*. at 1071-72. Although the court found that the allegations raised a strong inference that defendants had a motive to engage in willful or deliberately reckless falsity, under the PSLRA, motive is insufficient to raise a strong inference of scienter.  *Id*. at 1072.  Plaintiff failed to submit particularized allegations "indicating no less than a degree of recklessness that strongly suggests actual intent."  Id. at 1072, quoting *In re Silicon Graphics, Inc. Securities Litigation,* 183 F.3d 970, 979 (9th Cir. 1999).

Defendants contend, and the Court agrees, that allegations that defendants were motivated to commit fraudulent conduct because of the loan agreements were not supported by corroborating statements from anyone.  There is only an unsupported assertion that the defendants' covenants could have motivated their alleged misconduct.  Also, there are no facts

16

showing that the defendants knew or should have known of Corrpro's errors.

Plaintiff argues that defendants were motivated to artificially inflate Corrpro's financial information to avoid delisting from the NYSE.  By inflating shareholder equity, Corrpro was able to maintain listing on the NYSE until the end of the class period when it transferred to the AMEX a few weeks before announcing the restatement.  The NYSE required Corrpro to submit a plan explaining how it would meet shareholder equity requirements.

Pressure by defendants to meet NYSE requirements does not raise an inference of scienter.  The amended complaint does not identify any benefit that Corrpro lost when it transferred to the AMEX that would motivate the defendants to commit securities fraud.  Defendants suggest that because of Corrpro's size and market capitalization, the AMEX was more suitable for trading Corrpro's shares.

Finally, concerning motivation, defendants argue that there are no allegations that any individual defendant benefitted from Corrpro's inflated stock price through insider sales or in any other way.  Plaintiff responds by citing cases showing that insider sales is just one of many factors a plaintiff can allege to support a strong inference of scienter.  See e.g., *Novak v. Kasaks*, 216 F.3d at 311; *Stevelman v. Alias Research, Inc.,* 174

17

F.3d 79, 85-6 (2nd Cir. 1999).  The amended complaint does not indicate how defendants personally benefitted from the alleged misconduct.  In fact, some of them may have purchased Corrpro stock during the class period. They did not capitalize on the inflated stock prices, thus the strong incentive to commit fraud is lacking.  *In re Advanta Corporation Securities Litigation,* 180 F.3d 525, 541 (3rd Cir. 1999).  Plaintiff has not satisfied the PSLRA requirement that the amended complaint must state with particularity all facts on which that belief is formed.  15 U.S.C. § 78u-4(b)(1), *Novak v. Kasaks,* 216 F.3d at 312.

Defendants have also moved to dismiss under Fed. R. Civ. P. 9(b) which requires that fraud be pled with particularity.  The PSLRA increased the requirements as previously discussed.  To satisfy Rule 9(b), the plaintiff must allege time, place, and content of the alleged misrepresentations on which he or she relies as well as the fraudulent scheme, the fraudulent intent of the defendants and the injury resulting from the fraud.  *Coffey v. Foamex,L.P.,*  2 F.3d 157, 161-62 (6th Cir. 1993); *In re SCB Computer Technology, Inc. Securities Litigation,* 149 F. Supp.2d 334, 343 (W.D. Tenn. 2001).

The amended complaint alleges no facts showing that the defendants knew or could have known of Corrpro Australia's errors or that the regular procedures should have alerted them to Corrpro

18

Australia's misconduct earlier than they actually did.  *In re Comshare*, 183 F.3d at 553.  Fraud should not be inferred from a parent company's reliance on its subsidiary's internal controls. *Id.* at 554.  There are no specific facts alleged that raise "red flags" that should have put the defendants on notice of the errors.  *Id*. at 553.  Plaintiff's suggestion that the SEC investigation or that the reports about financial operations of Corrpro sent to Corrpro's creditors on a monthly basis should have served such purpose is without merit.  There is no reason why these defendants, who were not the persons being investigated, should know of improprieties of a new subsidiary from a prior investigation nor are there any other documents showing that the defendants knew of the problems at Corrpro Australia.

### SECTION 20(a)

In count II of the amended complaint, plaintiff alleges that individual defendants were controlling persons within the meaning of § 20(a) of the Securities Exchange Act and had the power and influence and exercised the same, causing Corrpro to engage in illegal conduct, and so are liable for damages suffered by the purported class members in connection with their purchase of Corrpro stock during the class period.

Section 20(a) of the Securities Exchange Act imposes joint and several liability on any "person who directly or

19

indirectly, controls any person liable for securities fraud" under the Securities Exchange Act, "unless the controlling person acted in good faith and did not directly or indirectly induce" the violation.  Since the plaintiff has not adequately pleaded a violation of the Securities Exchange Act, there is no basis for a § 20(a) violation.  *In re Champion Enterprises, Inc. Securities Litigation,* 144 F. Supp.2d 848, 876 (E.D. Mich. 2001).

Accordingly, for the foregoing reasons, defendants' motions to dismiss are granted.  (ECF 67, 69).

IT IS SO ORDERED.

s/ Paul R. Matia
JUDGE PAUL R. MATIA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

20

CERTIFICATE OF SERVICE

A copy of this Memorandum of Opinion and Order was filed electronically this 27th day of May, 2003.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/ Paul R. Matia
JUDGE PAUL R. MATIA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

21